## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

BRYON GOSSARD,
*d/b/a Gilbert Indoor Range, LLC,*

      Petitioner,

      v.

MICHAEL FRONCZAK,
*Director of Industry Operations, U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives,*

      Respondent.

Civil Action No. TDC-15-0850

## MEMORANDUM OPINION

The Gun Control Act of 1968, ("GCA"), Pub. L. No. 90–618, 82 Stat. 1213 (1968), requires any individual seeking to engage in the business of selling firearms to first obtain a Federal Firearms License ("FFL") from the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). 18 U.S.C. § 923(a) (2012). Petitioner Bryon Gossard challenges the denial of his FFL application by Respondent Michael Fronczak, Director of Industry Operations for ATF's Baltimore Field Division.[1] Pending before the Court is ATF's Motion for Summary Judgment. The Court held a hearing on the Motion on June 17, 2016. For the reasons set forth below, the Motion is GRANTED.

---

[1] Fronczak's predecessor, Gary Bangs, made the decision to deny Gossard's application. Pursuant to Federal Rule of Civil Procedure 25(d), Fronczak was automatically substituted as the Respondent in this litigation upon assuming Bangs's position.

## BACKGROUND

The following facts are presented in the light most favorable to Gossard, the nonmoving party:

### I.      Gilbert's ATF History

On June 8, 2012, Gossard applied for an FFL that would permit him to sell firearms at Gilbert Indoor Range (the "Range"), a shooting range located at 14690 Rothgeb Drive, Rockville, Maryland.  At the time, Gossard worked at the Range.  The Range is owned by Charles R. Gilbert, a former FFL holder whose GCA violations cost him the ability to sell firearms.  ATF denied the application, in part, because of Gossard's relationship with Gilbert, so an overview of Gilbert's history with ATF is in order.

In 2003, Gilbert owned two business entities with FFLs, American Arms International ("AAI") and Gilbert Indoor Range, LLC ("GIR LLC").  Gilbert's businesses had a history of GCA violations dating back to 1984.  A 2003 inspection by ATF revealed that Gilbert's businesses had lost track of several hundred firearms and committed hundreds of recordkeeping violations.  Based on these violations, in 2006, ATF revoked AAI's FFL and denied GIR LLC's FFL renewal application.  ATF's decision was upheld by the United States District Court for the District of Maryland in 2008, *American Arms Int'l v. Herbert*, No. CIV. DKC 2006-2468, 2008 WL 8098466 at *7 (D. Md. Feb. 19, 2008), at which point the revocation and denial went into effect and Gilbert was no longer a licensed firearms dealer.  The United States Court of Appeals for the Fourth Circuit affirmed the district court's decision in 2009.  *American Arms Int'l v. Herbert*, 563 F.3d 78, 87 (4th Cir. 2009).

While Gilbert's challenge was pending, he worked to change zoning restrictions that prevented him from selling firearms at the Range.  Those restrictions meant that only the

paperwork for firearms transactions could be completed at the Range. The physical transfer of the weapon had to occur offsite. In 2006, the Montgomery County Board of Appeals granted Gilbert's petition for a special exception that enabled him to sell firearms at the Range to its members. In 2007, the Board of Appeals expanded the special exception to allow four businesses, including GIR LLC, to sell firearms at the Range. By that point, however, Gilbert was in the process of losing his FFLs, which would prevent him from taking advantage of the zoning exception. According to ATF, Gilbert sought to avoid that costly consequence by orchestrating several straw applications for FFLs. Between 2005 and 2007, Gilbert's business associate, John Bradley, and two employees, Jeffrey Freeze and Brian Penko, submitted FFL applications to sell guns at the Range. Bradley and Freeze withdrew their applications, and ATF denied Penko's application for omitting material information—specifically, not listing Gilbert as a person with the power to influence Penko's business.

After these applications came to naught and Gilbert lost his legal challenge to the revocation of his businesses' FFLs, Gilbert applied for an FFL in his own name in 2008. In 2009, ATF denied that application, finding that his businesses' GCA violations should be imputed to him and that Gilbert himself violated the GCA by selling firearms after his businesses' FFLs had been revoked. In 2011, the district court upheld that decision. *Gilbert v. Bangs*, 813 F. Supp. 2d 669, 676-78 (D. Md. 2011). The Fourth Circuit affirmed on June 6, 2012. *Gilbert v. Bangs*, 481 F. App'x 52, 55 (4th Cir. 2012).

## II.     GIR LLC's Federal Firearms License Application

Two days later, on June 8, 2012, Gossard became the third Range employee to apply for an FFL to sell guns at the Range. Gossard applied for an FFL on behalf of GIR LLC. About two months earlier, on April 12, 2012, he had purchased the right to use the name "Gilbert Indoor

3

Range LLC" from Gilbert for one dollar.  The FFL application required Gossard to list all "responsible persons" at GIR LLC.  AR Ex. G-26, Gossard's Application at 3.  The application's instructions defined a responsible person as "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the corporation, partnership, or association, insofar as they pertain to firearms."  AR Ex. G-28, FFL Application Instructions at 1.  Gossard identified himself as the only responsible person for GIR LLC.  In response to another application question, Gossard stated that he was not an unlawful user of marijuana.

ATF Industry Operations Investigator Gretchen Arlington was assigned to investigate Gossard's application.  Arlington sought out details on how Gossard planned to operate GIR LLC, including by interviewing and requesting information from Gossard.  At one point during the inquiry, Gossard forwarded to Gilbert an email from Gossard's attorney advising Gossard on how to respond to an ATF request for additional information about Gossard's application.  On November 16, 2012, Arlington told Gossard that it "appeared likely" that the license "might be issued."   Hearing Transcript at 321-22.   That same day, two of Gossard's prospective competitors, Andrew Raymond and Theodore Sabate, contacted ATF to accuse Gossard of being a straw applicant for Gilbert and a marijuana user.   The accusation of marijuana use was corroborated by Greg Miller, a former Range employee, who signed an affidavit claiming that he had smoked marijuana with Gossard at the Range on numerous occasions.

Arlington's investigation revealed that Gossard intended to run his business out of a portion of the Range's firearms vault.  He executed a one-year lease with Burgundy Park Associates, LLC, a business controlled by Gilbert, which owns the building in which the Range is located.  The lease could be terminated without cause upon 30 days' notice by either party.

4

The lease entitled Gilbert to rent for the business a small desk in the vault, the immediate square footage around it, and a lockable wall display cabinet for $2,200 per month, provided that he obtained an FFL. There was no partition or divider between this space and the remainder of the vault. There was no separate security system for this space; it was covered by the security system for the Range, which was controlled by Gilbert. Because he used the vault to store his personal firearms as well as guns available for rent by members of the Range, Gilbert had full access to the GIR LLC space, with the possible exception of the lockable cabinet. Gossard told Arlington that he planned to buy some of Gilbert's personal firearms for resale. He stated, however, that Gilbert would have no role in the FFL business.

For start-up capital, Gossard deposited approximately $1,000 into a bank account he opened on behalf of GIR LLC. Gossard had no plans to purchase business insurance. According to Gossard, his plan was to order a firearm only after a customer put down a deposit, then collect the balance upon delivery. Under this model, Gossard would still need to have business funds to pay the full price of firearms up front. When interviewed by Arlington, Gossard was unfamiliar with the typical price markup on firearms.

Gossard did not plan to pay himself a salary and instead would remain an employee of the Range. He would not hire any employees of his own, but he planned to have Range employees assist with the business when he was not available, such as by receiving shipments, taking phone calls, and speaking to customers. Firearms sales would occur only when the Range was open and only for a portion of its operating hours, between 5:00 p.m. and 9:00 p.m., Monday through Friday.

During her interviews with Gossard, Arlington explained to Gossard the meaning of the term "responsible person" and the need to list all responsible persons on the application. She

5

expressed concerns about Gilbert's involvement and gave Gossard ample opportunity to amend his application. Gossard did amend his application on one occasion, but he never changed his answer to the question about responsible persons.

### III.    Procedural History

On August 26, 2013, ATF issued a Notice of Denial of Application for License to Gossard on the grounds that he had not disclosed Gilbert as a responsible person and because of his unlawful drug use.

Gossard requested a hearing, which was held on May 13 and September 25, 2014. ATF called three witnesses. ATF Industry Operations Intelligence Specialist Lisa Reid testified about Gilbert's GCA violations and the previous applications for FFLs at the Range. Sabate testified that on one occasion Gossard entered Sabate's gun shop smelling of marijuana. Finally, Arlington testified about her investigation into Gossard's application and her conclusion that Gossard should have listed Gilbert as a responsible person. Greg Miller, the former Range employee who claimed to have smoked marijuana with Gossard, did not testify. He told ATF that Gossard had threatened him, an allegation Gossard denies.

On January 20, 2015, ATF issued a Final Notice denying Gossard's application because he did not list Gilbert as a responsible person in his application and because he is an unlawful marijuana user.

On March 24, 2015, Gossard filed a Petition in this Court challenging ATF's denial of his FFL application. On December 22, 2015, ATF filed the administrative record and a Motion for Summary Judgment. On December 29, 2015, Gossard submitted an Amended Petition, making non-substantive changes to his initial Petition. On January 29, 2016, Gossard submitted an Opposition to the Motion. The Opposition attached a declaration from Gossard as well as a

verified complaint from a separate action pending before this Court also challenging the denial of Gossard's application.[2] On February 16, 2016, ATF filed a Reply memorandum.

## DISCUSSION

### I. Legal Standard

When ATF denies an FFL application, the applicant may request a hearing. 18 U.S.C. § 923(f)(2). If the agency maintains its position after the hearing, the applicant may petition the district court "for a de novo judicial review of such denial." *Id.* § 923(f)(3); *Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979). In conducting this review, the court reviews the administrative record, which "enjoys a presumption of verity." *American Arms Int'l v. Herbert*, 563 F.3d 78, 86 n.12 (4th Cir. 2009). The court may also consider "any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing." 18 U.S.C. § 923(f)(3); *American Arms Int'l*, 563 F.3d at 86 n.12. The court may hold an evidentiary hearing but only if a good reason to do so appears in the administrative record or is presented by the petitioner. *DiMartino v. Buckley*, 19 F. App'x 114, 115 (4th Cir. 2001); *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980).

Summary judgment is appropriate when, viewing the facts on the record in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact regarding the denial of the petitioner's application. *American Arms Int'l*, 563 F.3d at 82. If ATF relied on more than one reason for denying the application, disputes of material fact regarding some reasons do not preclude summary judgment so long as there are independent and undisputed grounds for denial. *See id.* at 86 (holding that factual disputes regarding some of the GCA

---

[2] On April 5, 2016, the Court stayed that separate action, *Gilbert v. U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives*, Civ. No. TDC-15-2127, pending the Court's ruling on this Motion.

violations that ATF relied upon to justify an FFL revocation did not prevent the district court from granting summary judgment because even "a single uncontested violation suffices to uphold the ATF's revocation decision").

In conducting the *de novo* review, the court is tasked with determining whether ATF was authorized to deny the application. 18 U.S.C. § 923(f)(3); *MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 677 (N.D. W. Va. 2014). Although the ultimate decision on the law and facts remains with the trial judge, the court may give ATF's findings "such weight as it believes they deserve in light of the evidence." *Stein's, Inc.*, 649 F.2d at 467. The court can find that ATF was authorized to deny the application if "the trial court concludes in its own judgment that the evidence supporting the decision is 'substantial.'" *Id.*; *Gilbert*, 813 F. Supp. 2d at 673.

## II.     Request for Discovery

Gossard argues that the Court should not grant summary judgment before he has the opportunity for discovery. Although a party may move for summary judgment before the commencement of discovery, *see* Fed. R. Civ. P. 56(b), summary judgment is generally denied when the nonmoving party 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2015) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). Under such circumstances, the proper procedure is for the nonmoving party to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) explaining why, "for specified reasons," the party needs discovery to oppose the summary judgment motion. Fed. R. Civ. P. 56(d); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Although the nonmoving party's failure to file a Rule 56(d) affidavit is a sufficient reason to refuse to defer ruling on a pre-discovery motion for summary judgment, the Court may still consider a request for discovery presented in the nonmovant's

8

memorandum of law opposing summary judgment. *Harrods Ltd.*, 302 F.3d at 244-45. Nevertheless, a court may deny a request for discovery pursuant to Rule 56(d) "when the information sought would not by itself create a genuine issue of material fact" sufficient to preclude summary judgment. *Pisano*, 743 F.3d at 931. Moreover, in the present posture, a *de novo* review of an ATF determination, the court may, but is not required to, consider additional evidence beyond the administrative record, *see* 18 U.S.C. § 923(f)(3), and should do so only for good reason, *see DiMartino*, 19 F. App'x at 115; *Stein's Inc.*, 649 F.2d at 466.

Although Gossard did not file a Rule 56(d) affidavit, he set out in his Opposition four reasons for seeking discovery. First, he argues that he should be allowed to depose Greg Miller and Theodore Sabate and to request any documents in ATF's possession regarding its communications with these individuals. Gossard seeks to rebut Miller's affidavit and Sabate's testimony alleging that Gossard is a marijuana user. Although evidence undermining the statements of Miller and Sabate might create a genuine issue of material fact as to whether Gossard is a marijuana user, there is no need to obtain such evidence because, as discussed below, the Court finds that Gossard's failure to list Gilbert as a responsible person authorized ATF to deny his application, regardless of whether or not Gossard unlawfully uses marijuana.

Next, Gossard seeks the opportunity to question Arlington, either at a deposition or an evidentiary hearing. At oral argument, Gossard's counsel stated that such inquiry is needed to explore Arlington's role in obtaining the affidavit from Miller and in allegedly fast-tracking approval of certain permits for Sabate's firearms company. The former reason relates to Gossard's alleged marijuana use, which the Court need not address in ruling on this Motion, while the latter reason is not relevant to ATF's authority to deny Gossard's application. Thus,

Gossard has not provided a valid basis to require a deposition of Arlington, whom his counsel already cross-examined at the ATF hearing.

Gossard also claims that he "requires discovery to rebut the allegations of the straw man theory and to obtain discovery involving the various individuals identified by Respondent as previous attempt[s] by Gilbert to circumvent the GCA." Pet'r's Opp'n Mot. Summ. J. ("Opp'n") at 9. Gossard does not contest that Bradley, Freeze, and Penko applied for FFLs at the Range. ATF offered those applications into evidence at the hearing, and Gossard's counsel had the opportunity to cross-examine an ATF investigator about them. Although Gossard objects to ATF's conclusion that these were straw applications that obscured Gilbert's intended involvement in the applicants' businesses, the issue before the Court on the pending Motion is narrow: whether Gossard's failure to list Gilbert as a responsible person authorized ATF to deny his FFL application. In resolving that question, the Court need not and does not rely on the earlier FFL applications. Thus, there is no need for such discovery.

Finally, Gossard contends that he should be able to probe ATF's internal policies regarding review of applications in which GCA violators serve as landlords for applicants. Gossard asserts that if ATF failed to follow its internal procedures in reviewing his application, its denial was "arbitrary and capricious agency action." Opp'n at 12-13. He argues that "the principles and law" articulated in *INS v. Yang*, 519 U.S. 26 (1995), and *Morton v. Ruiz*, 415 U.S. 199 (1974), entitle him to discovery. *Id.* at 12. Here, the GCA directs the Court to conduct a *de novo* review to determine if the agency was authorized to deny the application. 18 U.S.C. § 923(f)(3). The Administrative Procedure Act and the arbitrary and capricious standard that applies to APA challenges have no applicability to this case. *See* 5 U.S.C. § 704 (2012) ("Agency action made reviewable by statute and final agency action for which there is no other

adequate remedy in a court are subject to judicial review."); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."); *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("[W]here a statute affords an opportunity for *de novo* district-court review, the court has held that APA review was precluded . . . .").

    *Yang* and *Ruiz* are not to the contrary. Neither addresses the scope of ATF's statutory authority under the GCA. *Yang*, 579 U.S. at 32; *Ruiz*, 415 U.S. at 235. Consequently, evidence of ATF's internal policies would not create a genuine issue of material fact. *See Taylor v. Hughes*, 548 F. App'x 822, 825 (3d Cir. 2013) (rejecting petitioner's request for discovery regarding ATF's internal policies in an FFL revocation case and finding that the APA, *Yang*, and *Ruiz* did not apply to require a review of ATF internal policies); *Weaver v. Harris*, 486 F. App'x 503, 505-06 (5th Cir. 2012) (rejecting petitioner's request for discovery regarding ATF's internal policies because they were irrelevant to the court's review of the revocation decision).

    Consequently, Gossard's request for discovery is denied.[3]  For the same reasons, the Court also declines to hold an evidentiary hearing.  The record is fully developed as to the relationship between Gossard and Gilbert and provides a sufficient basis for determining whether Gossard should have listed Gilbert as a responsible person on his FFL application.

## III.    Denial of the FFL Application

    ATF, exercising authority delegated by Congress, administers the application and approval process for FFLs.  18 U.S.C. § 923(a); 28 C.F.R. § 0.130(a)(1) (2015).  ATF requires an

---

[3]    The Opposition also requests that this case be consolidated with *Gilbert v. U.S. Bureau of Alcohol, Tobacco, Firearms & Explosives*, Civ. No. TDC-15-2127, and *Gilbert v. LeDoux*, Civ. No. RWT-15-2586.  Gossard has not filed a motion to consolidate, so the request is not properly before the Court.

FFL applicant to list all of the prospective firearms business's "responsible persons," defined as "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the corporation, partnership, or association, insofar as they pertain to firearms."[4]   AR Ex. G-28, FFL Application Instructions at 1.   The willful omission of a responsible person from an FFL application is grounds for denial.   18 U.S.C § 923(d)(1)(D); 27 C.F.R. § 478.47(b)(4) (2016); *id.* § 478.71; *MEW Sporting Goods, LLC*, 992 F. Supp. 2d at 678.   Compliance with such ATF requirements is necessary to "ensure that persons entitled to have guns may have them, and that persons not entitled to have guns are denied them." *RSM, Inc. v. Herbert*, 466 F.3d 316, 324 (4th Cir. 2006).

The definition of a responsible person has four components.   First, because it includes any individual "possessing" the power to direct an applicant's business, an individual qualifies as a responsible person even if she does not intend to act on that power.   The capacity for intervention is enough.   Second, the person's control can be direct or indirect.   Third, that direction must extend to the "management, policies, and practices" of the applicant's business. *See United States v. 1,922 Assorted Firearms & 229,553 Rounds of Assorted Ammunition*, 330 F. Supp. 635, 638 & n.2 (E.D. Mo. 1971) (holding that the license holder's clerk, who could access the firearms store and make sales without the license holder present, was not a responsible person because he had no control over the management, policies, and practices of the business). Fourth, the management, policies, and practices subject to direction must pertain to firearms, as opposed to other parts of the business unrelated to guns. *See* Office of Enforcement Programs

---

[4]   This definition closely tracks language in 18 U.S.C. § 923, which allows ATF to deny the FFL application of an applicant, "including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association," who is "prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce."   18 U.S.C. § 923(d)(1)(B).

and Services, ATF, E-Pub. 5320.8, *National Firearms Act Handbook* § 5.1.3.3 (2009) (noting that "individuals only having duties related to administration or personnel" are not responsible persons).

Although each application must be examined on its own terms, case law suggests several factors that are often relevant when determining if an individual is a responsible person in an FFL applicant's business. The most direct evidence would consist of facts showing that the individual actually makes decisions for the applicant's firearms business. *See MEW Sporting Goods, LLC*, 992 F. Supp. 2d at 679-80 (holding that the applicant's wife was a responsible person because she handled the day-to-day operations of the gun sales business while the applicant worked a different full-time job). Such evidence is more likely to play a role in license revocations than license denials because, in the latter, the FFL business has yet to begin operating.

In the case of a denial of an initial license application, if an applicant obtains an FFL business from an individual whose GCA violations disqualify him from continuing to operate it, the fact that the transfer occurred shortly after the disqualification and was not an arms-length transaction can indicate that the applicant's business will not operate independently of the former owner. *See Casanova Guns, Inc. v. Connally*, 454 F.2d 1320, 1322-23 (7th Cir. 1972) (concluding that after Casanova's, Inc. was indicted for firearms violations and was therefore ineligible to have an FFL, a separate business headed by the son of Casanova's owner and selling firearms out of the same facility was established for the "substantial purpose" of circumventing the restrictions on Casanova's); *Virlow LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 1:06-CV-375, 2008 WL 835828, at *4-7 (W.D. Mich. Mar. 28, 2008) (finding that an applicant's mother was a "responsible person" where the mother was unable to renew her

13

business's FFL then transferred the firearms portion of the business to the applicant). The fact that the applicant plans to acquire an initial inventory of firearms from such an owner further suggests an ability to direct. *See Casanova Guns*, 454 F.2d at 1322-23 (considering the fact that Casanova Guns purchased the firearms inventory of predecessor Casanova's, Inc. with an unsecured promissory note); *XVP Sports, LLC v. Bangs*, No. 2:11CV379, 2012 WL 4329258, at *5 (E.D. Va. Sept. 17, 2012) (considering the fact that the FFL applicant's "entire beginning inventory of firearms" consisted of the prior owner's guns sold on consignment in concluding that the prior owner was a "responsible person").

Moreover, an individual who will pay the salary of the FFL applicant and others who will work for the business could exercise direction and control over the applicant. *See Casanova Guns*, 454 F.2d at 1322-23 (considering the fact that the original business both paid the salary of the owner of the new business and provided employees to help with the new business as needed); *XVP Sports*, 2012 WL 4329258, at *5 (holding that an individual could indirectly influence the applicant's business in part because he paid the applicant's salary and the salaries of the employees that would work for the applicant). A non-applicant's control over the physical space in which the FFL business operates, including the security system, is another potential means of leverage. *See Casanova Guns*, 454 F.2d at 1323 (considering the fact that the new business was dependent on the old business for providing utilities); *Nat'l Lending Grp., L.L.C. v. Mukasey*, No. CV 07-0024-PHX-PGRET, 2008 WL 5329888, at *5, 11 (D. Ariz. Dec. 19, 2008) (considering an individual's responsibility for the security system of the FFL business and access to its firearms as factors contributing to that individual's status as a responsible person). Finally, if an individual exerts some influence over the FFL application process, that could also suggest future involvement in the business's operations. *See Virlow LLC*, 2008 WL 835828, at *6-7

(holding that an applicant's mother was a responsible person in part because she actively advocated for approval of the FFL application, used the terms "we" and "our" in correspondence advocating for the FFL license, and paid for the application and the legal challenge to its denial).

Here, although Gossard told ATF that Gilbert would have no role in the firearms business, a position with which ATF disagrees, the Court does not need to assess the credibility of Gossard's claim. The Court need only determine whether Gilbert *could* direct GIR LLC's operations pertaining to firearms, not whether he would actually do so. Upon consideration of the factors described above, the undisputed evidence shows that, at a minimum, Gilbert could indirectly control the management, policies, and practices of GIR LLC.

First, Gossard's application was submitted only two days after the Fourth Circuit issued an opinion ending Gilbert's bid to reacquire an FFL. The arrangement was anything but arm's length. *See Virlow LLC*, 2008 WL 835828, at *7. Gossard, then a current employee of Gilbert at the Range, paid only one dollar for the right to use the name "Gilbert Indoor Range LLC," and, by extension, the right to operate under the zoning exception obtained by Gilbert. Gilbert had previously sold the same rights to John Bradley, a business associate, for $1,000. Gossard made no attempt to negotiate the terms of the lease. Tellingly, during the FFL application process, Gossard kept Gilbert in the loop, forwarding him email correspondence relating to his application. *See id.* at *6-7. These facts support the inference that Gossard was a straw applicant for Gilbert, such that GIR LLC would not operate independently from Gilbert.

Second, the facts indicate that Gossard was not in a position to operate the business independently from Gilbert. Gossard had no business plan, no business insurance, and no knowledge of the appropriate markups for firearms. Gossard only put about $1,000 into GIR LLC, and he had no inventory of firearms. *See Virlow LLC*, 2008 WL 835828, at *7 (noting that

"it is readily apparent" that the FFL applicant and her husband did not have "any financial resources of their own"). Not surprisingly, Gossard told Arlington that he planned to sell some of Gilbert's personal firearms collection through GIR LLC. *See Casanova Guns*, 454 F.2d at 1322-23; *XVP Sports, LLC*, 2012 WL 4329258, at *5. Even under his concept of only purchasing firearms upon receiving a deposit from the buyer, the $1,000 appeared to be insufficient given that he would have to put down the full price for each firearm in order to acquire it. At the same time, Gossard was immediately responsible for $2,200 per month in rent, which represented more than 60 percent of his monthly salary. These facts strongly suggest that Gilbert would have had to play an active role in the management, policies, and operations of GIR LLC.

Third, Gilbert had the ability to direct GIR LLC's practices because he effectively had financial control of Gossard and GIR LLC. Gilbert was Gossard's employer at the Range, which provided his only regular source of income at the time of the FFL application. *See Casanova Guns*, 454 F.2d at 1322-23; *XVP Sports, LLC*, 2012 WL 4329258, at *5. Even after GIR LLC began selling firearms, Gilbert would still be paying Gossard's salary. Gilbert also paid the salaries of all other Range employees, some of whom Gossard stated he would enlist to assist with the business when he was unavailable. Notably, Gilbert also had control over GIR LLC's customer base, because under the zoning restriction, GIR LLC could only sell firearms to those with Range membership, which was under Gilbert's control.

Fourth, Gilbert controlled the premises where GIR LLC would operate. GIR LLC did not have separately demarcated space at the Range. Rather, the business was to be operated from a desk in the Range's vault, to which Gilbert had unfettered access. All building operations, including the security system, were controlled by Gilbert. *See Casanova Guns*, 454 F.2d at

1323; *Nat'l Lending Grp., L.L.C.*, 2008 WL 5329888, at *5, 11. Most importantly, Gossard had the ability to exert short-term control over GIR LLC through the lease, which he could terminate for any reason with only 30 days' notice. Because the zoning restrictions limited GIR LLC to sales at the Range, such termination would have been fatal to the business.

In *XVP Sports,* after a firearms business called SSDI had its FFL revoked, XVP was formed as a new business, owned by the wife of SSDI's owner and operated by a company president, to sell firearms out of the same location. 2012 WL 4329258 at *1. The court found that SSDI's owner, the original FFL holder, was nevertheless a "responsible person" for XVP because he had paid the FFL application fee, continued to pay the salary of XVP's president, paid SSDI employees who also worked for XVP, owned the building, leased space to XVP without always requiring rent payments, and was going to have XVP sell his personal firearms on consignment. *Id.* at *5. Likewise, the GIR LLC FFL application was submitted in the immediate aftermath of restrictions on Gilbert; Gossard, as the owner of GIR LLC, was closely associated with Gilbert as an employee and started the business through a less than arm's length transaction; Gilbert was going to pay Gossard's salary and would pay Range employees who would assist Gossard; Gossard was planning to operate under a lease out of the same facility where Gilbert previously sold firearms, without any demarcated business area; and he was planning to use Gilbert's personal firearms as initial inventory. Taking all of these facts together, the Court finds that ATF was authorized to conclude that Gilbert had the power to control GIR LLC's management, policies, and operations relating to firearms such that he was a responsible person who should have been reported in Gossard's FFL application. *See id.*

There was also substantial evidence that Gossard's failure to list Gilbert as a responsible person was "willful" as that term is used in the GCA. *See* 18 U.S.C. § 923(d)(1)(D). "[M]alice

17

or improper motive is not necessary to establish willfulness." *American Arms Int'l*, 563 F.3d at 83. A "'deliberate disregard" of, or "plain indifference" to "known legal obligations" is sufficient to constitute "willfulness." *Id.* at 84 (quoting *RSM, Inc.*, 466 F.3d at 321). Arlington met with Gossard to explain the requirement to list responsible persons on the FFL application. She expressed ATF's concerns with Gilbert's role in GIR LLC. She gave him multiple opportunities to amend his application. Gossard did not express any confusion with the requirements but still did not amend his application to add Gilbert as a responsible person. Because Gossard was aware of both the facts that rendered Gilbert a responsible person and his legal obligation to list responsible persons on his application, his omission of Gilbert from the FFL application was willful. *See id.* at 85 (holding that willfulness may be inferred "where a licensee receives official warning that his actions violate the GCA and his record of compliance does not change"). Consequently, the Court finds that ATF was authorized to deny Gossard's FFL application because he willfully omitted material information from that application.

Gossard's arguments to the contrary are unavailing. Gossard contends that ATF cannot deny his application simply because his prospective landlord has a history of GCA violations. Gossard's application was denied, however, not because Gilbert was his landlord, but because Gossard made a material omission. As discussed above, Gilbert's ability to control GIR LLC extended well beyond his status as the landlord, to include paying Gossard's salary and those of others who would assist with the business.

Gossard also contends that ATF unfairly attributed Gilbert's GCA violations to Gossard. ATF does take the position in its brief that the GCA violations of a responsible person can be imputed to the applicant. The Court does not need to resolve this disagreement because there was substantial evidence that Gilbert was a responsible person, and Gossard failed to list him on

his FFL application. The GCA expressly authorizes ATF to deny applications for such material omissions. 18 U.S.C. § 923(d)(1)(D).

Finally, Gossard claims that he stopped working for Gilbert in 2015 and that he would be willing to sell firearms from a location other than the Range. While these developments might be relevant to ATF's consideration of a future application, the Court must determine whether ATF was authorized to deny the application Gossard actually submitted. To do so, it evaluates the facts at the time ATF made its decision. Subsequent developments are irrelevant to the agency's statutory authority to deny an application. *Virlow LLC*, 2008 WL 835828, at *6. The undisputed facts provide substantial evidence to show that Gilbert qualified as a responsible person at the time that ATF rejected Gossard's application.

The Court's determination that ATF was authorized to deny Gossard's application for the willful omission of material information does not mean that ATF can necessarily deny any FFL application to sell firearms at the Range while Gilbert owns the property. ATF disclaimed that position at the hearing on this Motion. A truly independent individual or business, entering into an arm's length transaction, with clearly demarcated space under its exclusive control, may well qualify for an FFL. The Court trusts that ATF will give full and fair consideration to any future FFL applications relating to this facility that may be submitted by Gossard or others.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is GRANTED. A separate Order shall issue.

Date: June 30, 2016

THEODORE D. CHUANG
United States District Judge

19